ROANE, Judge.
This is a bill brought by the second children of Mr. G. Yerby against his administrator, praying that a will made by him in favor of his first children, prior to his last marriage, may be considered as revoked, or that they may be let into a share of his estafe, under the equity of the third section of the act of Assembly, concerning wills, &c. R. C. 168, [Oct. 1785, c. 61, 12 Stat. Larg. 140.]
The will contains a disposition of his whole estate to his first children, and the present plaintiffs are wholly unprovided for.
It is alledged, but not shewn, that this will was made by Mr. Yerby, when a widower: But, I do not know that it is material whether he were so, or was then married to his first wife. Most of the cases on this head are of wills made during celibacy: But, the case of Christopher v. Christopher, 4 Burr. 2182, was of a will made in the lifetime of a former wife: She, however, died without issue; and the will was, I presume, of course in favor of a stranger. In the event, however, of this testator having been a widower, when his will was made, it is evident that a greater change of his situation had intervened between the time of its date, and his death, than under a contrary supposition; and it is the alteration of situation only, which, in cases like the present, gives ground to presume a revocation. I cannot also, at present, see a reason for presuming^. revocation in favor of the children of an intervening mother, which does not equally hold in favor of those of a contemporaneous one.
This case may be considered: 1. As on the general question just' stated. 2. As affected by the testimony in the cause.
On the general question, I have found no decisions in favour of a revocation, except where there was a disposition of the whole property, and none except where the disposition was to others than children of the testator. If the case stated by Lord Nottingham, in Wingfield v. Combe, 2 Ch. Ca. 16, be considered as being of a contrary kind, I reply, that the principle of that case has been often since over-ruled, and, that that case would not be subscribed to at this day.
As to the first requisite above-mentioned, our will comes fully up to it; for, here is a total disposition. The second requires some consideration.
*293 If a man standing in a state of celibacy, or* being married has no children, bequeaths his estate to those who have no natural or moral claim upon him, and afterwards contracts a new relation, which produces those who have the strongest, of all human claims upon him for protection and assistance, in the absence of all testimony relative to intention, we must presume, in honor of the human character, and in conformity to the just idea, that no man intends to rebel against the strongest moral and natural duties, that the testator had forgotten the existence of the instrument, or had supposed it nullified by the posterior change in his situation. We must not readily admit a presumption so outrageous against every thing just and proper; so militant against the feelings of human nature, as that a parent would, in iavour of strangers, disinherit his whole offspring, By strangers I here mean, persons other than children of the testator. "Whatever good reasons may exist with a parent for pretermitting particular children, it is an unreasonable presumption, that the whole of a man’s progeny has incurred his wrath and displeasure. But, this extreme case is widely different from that before us. Six out of eight of the testator’s children are provided for: Strangers are not preferred to his own offspring: It is, at most, only a particular disherison: And, if these children had been the children of the same mother, this suit would not been brought. Yet, it is not easy to discern that their claims on their father are less strong than those of the present plaintiffs.
But, however this question may be as a general one, the idea of revocation is rebutted in the present case.
So far from this instrument being considered by the testator as revoked, as being no will, it was considered by him as a subsisting will; but one, indeed, which he intended afterwards to alter. Jlbner Dobyns proves this. A reference to a will as a subsisting one, rebuts the presumption of revocation. Brady v. Cubit, Dougl. 31. And an expression of intention to revoke a will in futuro, does not revoke the will, unless the alteration he made. Pow. on Dev. 534. Much less will an intention to alter a will be presumed to revoke it.
It is also in opposition to the presumption of revocation, that the devisor declared that his first children should not *294 be injured by his second marriage, and that he intended' the land he lived on, even after the birth of his last child, for the sons of his. first marriage: Both these intentions would be contravened by a decision in favor of revocation.
It was argued, by Mr. Wickham, that a Court of Equity had not, and that the Court of Probate only had, the power to decide on questions of implied revocations. He differs much from a respectable Judge of the General Court, who decided in the case of Wilcox v. Rootes, that, a Court of Probate had nothing to do with questions of the kind. That judgment was reversed in this Court;* but, there is nothing in the decision here, conveying an idea, that the power belonged to the Courts of Probate, in exclusion of other Courts. Mr. Wickham’s idea is also confronted by § 11 of the act “concerning wills, &c.” [Oct. 1785, 12 Stat. Larg. 142; c. 104, § 13, R. C. ed. 1819,] authorising a procedure in Chancery, within seven years, to contest the validity of a will.
Mr. Wickham also supposed, that the ground of implied revocations was narrowed down, so far as to shut out the present case, by the specification of two cases of total and particular revocation, provided for by § 3 of the same act. As this cause is in Mr. Wickham’s favor upon the merits, I have not considered, nor shall I say, farther than is inferable from this opinion, whether the ground of implied revocation taken by the act, be narrower than that, which before existed. But, if it be so, it seems to me at present, that if the strong negative words of that clause interdicting revocations otherwise than pui’suant to the act, do not extend to implied revocations, neither can the particular affirmative declarations thereof, going to cases not coming up to the general doctrine, or only inserted through abundant caution.
But, the plaintiffs say, they come within the equity of the third clause concerning wills, &c. That clause has two members. . The first is, that if a testator, having no child living, shall make a will, not mentioning or providing for children, which he might have, if at the time of his death, he leave a child, or his wife ensient of a child, which shall be born, such will shall have no effect during the life of such aftei’-born child, and shall be void, unless the child die without having been married, or before attaining twen *295 iy-onc. This provision «lands on the samo ground with the general doctrine, authorising implied revocations, which I have just stated: It makes some alterations, indeed, as to the effect of the will in relation to the after-born child’s marrying or coming of age; but, it only contemplates a case of a disposition to strangers; for, it only applies to cases of testators having no children living at the date of the will. It consequently only establishes a revocation, where there is a total disherison in favor of strangers, of all the testator’s progeny'.
In these important respects, our case differs from that provided for by that member of the clause, and does not: come within the reason upon which it is founded.
The latter member of the clause relates to posthumous pretennxtted children, and gives them a provision which, it is presumed, the father would have done, could he have foreseen their future existence. The reason and equity of this provision does not extend to our case, where the plaintiffs wore living in the testator’s life-time.
Under those impressions, 1 think the decree of dismission ought to bo affirmed.
FLEMING, Judge.
The important question is, whether the second marriage and birth of children by it, revoked the will of 1785? That marriage, and the birth of a child are a revocation, was, at first, considered as applying to personal estate only; they were, however, at length, settled to be equally applicable to real. [Wellington v. Wellington,] 4 Burr. 2171; Pow. on Dev. 555; but as a presumptive revocation only, liable to be rebutted by expressions in the will, or by circumstances. [Lugg v. Lugg, ] 1 Ld. Raym, 441; [Brady v. Cubitt,] Dougl. 31: And, in the present case, there is abundant evidence that the testator, when aboxvt to marry the second time, declared that it should not prejudice his children by the former marriage; and, even after the birth of a son by tbe last wife, he was heard to say he did not intend him any land, but would give him an education, and bind him to sea, or some useful trade. These circumstances repel the idea of a revocation, even upon the principles of the English law: And, under the act of Assembly which requires actual destruction of the will, or a revocation in writing, the appellants can have no relief; for, they come within neither of the exceptions: Not within that which declares that no will, made when the testator had no child living, shall *296 be effectual during the life of an after-born child; because the testator had children living when his will was made: Nor within that relative to posthumous children; because the appellants were not such. Of course, there is nothing to save them from the general operation of the law. For, although the testator is said to have declared, in his last illness, an intention, if he recovered, to make alterations in his will, they were not expressed, or reduced to'writing, and, therefore, can have no manner of effect. Consequently, there being nothing to impeach the will, the Chancellor did right in dismissing the bill, and his decree ought to be affirmed.
CARRINGTON, Judge.
I recollect two cases upon the subject of implied revocations: The first was the will of an old man who had never married, but, who after-wards marrying, and having children, the General Court adjudged it a revocation. The other was the will of Mr. Wilcox, who had no children at the time of making it, but afterwards married and had issue, which this Court decided revoked the will. [Wilcox v. Rootes et al.] 1 Wash. 140. The present case, however, is like neither of them; for, the testator here, had children at. the time of making his will; and, therefore, the appellants are not entitled, upon the ground of those decisions. But, even in cases where the testator has no children at the time of making his will, the presumption may be rebutted by circumstances: And here the testator spoke of his will in his last illness, and declared an intention to make alterations, but manifested no desire to revoke it. Added to which, he had before said that he did not mean to give the complainants any part of his estate, but to educate them, and bind the son to sea, or to a trade. These circumstances destroy the presumption; and, as the appellants do not come within the exceptions in the act of Assembly, I think the decree is right, and ought to be affirmed.
LYONS, Judge.
Concurred, that the decree should be affirmed. *

[* See Wilcox v. Rootes et al. 1 Wash. 140; Johnson v. Johnson, 1 Phillm. R. 447; Doe v. Bardford et al. 4 Mau & Selw. 10; Brush v. Wilkins et al. 4 Johns, Ch. R. 506.]

[* Wilcox v. Rootes, 1 Wash. 140; Bates v. Holman, 3 Hen. & Munf. 502; Hughes v. Hughes' ex'r. 2 Munf. 209.]

[* See Act Dec. 5th, 1794, c. 170, R. C. ed. 1803; c. 104, § 4, R. C. ed. 1819.]